1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11    JEFFREY E. WALKER,

12              Plaintiff,                    No. 2:13-cv-1193 AC P

13         vs.

14    MOHADJER, Clinical Psychologist,
      et al.,
15
                Defendants.                   <u>ORDER</u>
16
      _____/
17

18              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C.

19    § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis.

20    This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

21              Plaintiff has submitted a declaration that makes the showing required by 28

22    U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

23              Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

24    U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

25    in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

26    direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

                                             1

1   and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly

2   payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

3   account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

4   each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28

5   U.S.C. § 1915(b)(2).

6          The court is required to screen complaints brought by prisoners seeking relief

7   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

8   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

9   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may

10  be granted, or that seek monetary relief from a defendant who is immune from such relief.  28

11  U.S.C. § 1915A(b)(1),(2).

12         A claim is legally frivolous when it lacks an arguable basis either in law or in

13  fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-

14  28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

15  indisputably meritless legal theory or where the factual contentions are clearly baseless.

16  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however

17  inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d

18  639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

19         A complaint must contain more than a "formulaic recitation of the elements of a

20  cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

21  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading

22  must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of]

23  a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

24  Procedure 1216, pp. 235-235 (3d ed. 2004).  "[A] complaint must contain sufficient factual

25  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

26  566 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

1    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2    defendant is liable for the misconduct alleged." Id.

3          In reviewing a complaint under this standard, the court must accept as true the

4    allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

5    738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

6    doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421(1969).

7          Plaintiff names the following as defendants: Mohadjer, clinical psychologist at

8    California Medical Facility-Vacaville (CMF); Dr. Fiallos, psychiatrist; Strayhorn, clinical

9    psychologist; CCI Sheldon; warden [unnamed]; Department Mental Delivery System [or

10    Department of Mental Health].  Complaint at 1, 3.

11          Plaintiff alleges that he is a mental health delivery system patient in the CCCMS

12    (Correctional Clinical Case Management System) level of care who is not receiving treatment

13    for the post-traumatic stress disorder (PTSD) that he suffers following sexual abuse.  Plaintiff

14    claims to have arrived at CMF in December of 2012 in order to receive treatment in the

15    enhanced outpatient program (EOP).  Plaintiff alleges that the prison system, including CMF,

16    does not provide treatment for PTSD resulting from the trauma of sexual abuse.  Plaintiff

17    contends that his PTSD arose from "inappropriate sexual incidents" and related acts of violence

18    in 1993 and 1994.  He references an alleged incident at Centinela State Prison in August of 1994

19    when he was "set up to fight" a Southern Hispanic who was shot and killed.  Plaintiff was sent to

20    the Corcoran Security Housing Unit in 1994-95 where he was "forced to abuse by prison

21    g[ua]rds."  He alleges he was assaulted and the victim of falsified disciplinary RVR's (rules

22    violation reports) but was ultimately vindicated in 2006.  He references unspecified "violations"

23    occurring from 1996 to 2000.  Plaintiff claims he was to receive treatment for a "current sexual

24    assault by prison g[ua]rds and supervisors" as well as for "prison caused incidents" in 2010,. He

25    has experienced "numerous crisis placements" related to these incidents.  Complaint at 4-6.

26          Plaintiff alleges that since his December 2012 arrival at CMF, defendant Dr.

Fiallos has refused to provide treatment for plaintiff's PTSD or to refer plaintiff to an outside facility such as Patton State Hospital or Atascadero State Hospital even after reviewing documents showing plaintiff poses a serious risk of injury to himself and others "due to triggers that could spark a spontaneous reaction. . . ."  Without attaching supporting documentation, plaintiff recounts that his UHR (unit health record) shows that in 2005 plaintiff slit his wrist "numerous times," was a threat to others in a double cell and was placed in San Francisco General Hospital.  He alleges that in 2006 he slashed his wrists at San Quentin, ingested pills and razor blades, tied a noose around his neck and threatened a cellmate.  He was placed in restraints. Plaintiff claims he has not received the appropriate treatment for his PTSD at various prisons from 2006 to the present.  Complaint at 6-10.

Plaintiff claims that both defendants Fiallos and Strayhorn have refused to treat him or recommend treatment for him and both Fiallos and Strayhorn, in league with defendant Sheldon, have engaged in a "conspiracy to get rid of [him] knowing if not treated [he] poses a threat of 'imminent danger' any time due to triggers" easily caused by custody staff or the threat of being double celled.  Complaint at 10.

Plaintiff claims that he was removed from EOP and placed in the CCCMS level of care, resulting in no treatment, although he also claims his medication has been increased. Plaintiff alleges defendant Mohadjer has been deliberately indifferent to him because he has made numerous complaints about her friends and co-workers in the past and because she has become prejudiced against him due to the nature of his criminal conviction.  In addition, she is retaliating against him for past complaints and lawsuits.  All defendants are aware that "this prison environment for the past 7 yrs" have resulted in medical injuries, crisis bed placements, disciplinaries and life-threatening situations. Complaint at 11.  Plaintiff seeks injunctive relief as well as compensatory and punitive damages.  Id. at 4.

<u>Elements of an Eighth Amendment Violation</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on

4

1   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

2   deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

3   To prevail, plaintiff must show both that his medical needs were objectively serious, and that

4   defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

5   (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

6   mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5

7   (1992).

8           A serious medical need exists if the failure to treat a prisoner's condition could

9   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

10  that a prisoner has a serious need for medical treatment are the following:  the existence of an

11  injury that a reasonable doctor or patient would find important and worthy of comment or

12  treatment; the presence of a medical condition that significantly affects an individual's daily

13  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

14  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

15  (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

16  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

17          In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

18  demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

19  at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

20  which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

21  violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or

22  that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is

23  established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

24  inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

25  citation omitted) (emphasis added).

26          A physician need not fail to treat an inmate altogether in order to violate that

1   inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

2   1989).  A failure to *competently* treat a serious medical condition, even if some treatment is

3   prescribed, may constitute deliberate indifference in a particular case.  Id.  However, mere

4   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

5   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

6   662 F.2d 1337, 1344 (9th Cir. 1981).  In cases involving complex medical issues where plaintiff

7   contests the type of treatment he received, expert opinion will almost always be necessary to

8   establish the necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d

9   390 (9th Cir. 1988).

10          A finding that an inmate was seriously harmed by the defendant's action or

11  inaction tends to provide additional support for a claim of deliberate indifference; however, it

12  does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the

13  more serious the medical needs of the prisoner, and the more unwarranted the defendant's

14  actions in light of those needs, the more likely it is that a plaintiff has established deliberate

15  indifference on the part of the defendant."  McGuckin, 974 F.2d at 1061.

16          Plaintiff's allegations against defendants Fiallos, Strayhorn, Sheldon and

17  Mohadjer do not rise to the level of an Eighth Amendment violation.  Plaintiff alleges untreated

18  mental health trauma and vaguely described misconduct of prison guards stretching back for two

19  decades.  He claims the type of mental health treatment he needs is not available to him in

20  prison.  Plaintiff contends that he is receiving no treatment from the defendants at the same time

21  he asserts that his medication dosage has increased.  Plaintiff alleges at most a difference of

22  opinion as to what treatment is appropriate for him, which does not amount to an Eighth

23  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330.  These claims must be dismissed but

24  plaintiff will be granted leave to amend.

25          Plaintiff states a wholly conclusory claim of retaliation by defendant Mohadjer

26  for plaintiff's complaints and lawsuits.  Retaliation by prison officials for the exercise of a

prisoner's constitutional right of access to the courts violates the federal constitution.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); Rizzo 778 F.2d at 532. The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n.1) (10th Cir. 1990).

In Pratt, the Ninth Circuit concluded that in evaluating retaliation claims, courts should defer "to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472 (1995)).  This claim will be dismissed but plaintiff will be granted leave to amend.

As to the unnamed warden, plaintiff fails to link the conduct of this official to any alleged constitutional deprivation he has suffered. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

1    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

2    Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

3    § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

4    (no affirmative link between the incidents of police misconduct and the adoption of any plan or

5    policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

6    another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

7    affirmative act, participates in another's affirmative acts or omits to perform an act which he is

8    legally required to do that causes the deprivation of which complaint is made."  Johnson v.

9    Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

10        Moreover, supervisory personnel are generally not liable under § 1983 for the

11    actions of their employees under a theory of respondeat superior and, therefore, when a named

12    defendant holds a supervisorial position, the causal link between him and the claimed

13    constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

14    (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

15    Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

16    there is no evidence of personal participation).  Vague and conclusory allegations concerning the

17    involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

18    of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of

19    personal participation is insufficient).

20        To the extent plaintiff seeks injunctive relief from the warden in his official

21    capacity, a practice, policy or procedure of the state must be at issue.  Haber v. Melo, 502 U.S.

22    21, 25 (1991).  Plaintiff's claim that the treatment he believes he needs is unavailable to him

23    does not sufficiently implicate a state policy, practice or procedure.  The claim against the

24    unnamed warden will be dismissed but plaintiff will be granted leave to amend.

25        Plaintiff evidently seeks to name the California Department of Mental Health as

26    one of the defendants.  The Eleventh Amendment serves as a jurisdictional bar to suits brought

by private parties against a state or state agency unless the state or the agency consents to such suit.  See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978)( per curiam); Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir. 1982).  In the instant case, the State of California has not consented to suit.  Accordingly, plaintiff's claims against the Department of Mental Health are frivolous and must be dismissed.

If plaintiff chooses to amend the complaint, he must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Request for "Injunction/Temporary Restraining Order"

Plaintiff has also filed a putative request for a temporary restraining order (TRO).  The purpose in issuing a TRO is to preserve the status quo pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction.

It is apparent, however, that requests for temporary restraining orders which are not <u>ex parte</u> and without notice are governed by the same general standards that govern the issuance of a preliminary injunction.[1]  <u>See</u> <u>New Motor Vehicle Bd. v. Orrin W. Fox Co.</u>, 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); <u>Los Angeles Unified Sch. Dist. v. United States Dist. Court</u>, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); <u>Century Time Ltd. v. Interchron Ltd.</u>, 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

Preliminary Injunction

"A preliminary injunction is an 'extraordinary and drastic remedy'. . . never awarded as of right." <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008) (internal citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Am. Trucking Ass'n, Inc. v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir.2009) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)).   A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . . assuming the other two elements of the <u>Winter</u> test are also met." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

The Ninth Circuit has reiterated that under either formulation of the principles, if

---

[1]     To the extent that this is an ex parte motion for a TRO without notice, the undersigned notes that plaintiff has failed to satisfy the stringent requirements of Fed. R. Civ. P. 65.  <u>See</u> <u>Reno Air Racing Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1131 (9th Cir. 2006).  Rule 65(b)(1) permits issuance of a TRO without "notice to the adverse party or its attorney, only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury. . . will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

1 the probability of success on the merits is low, preliminary injunctive relief should be denied:

2       <u>Martin</u> explicitly teaches that "[u]nder this last part of the
3       alternative test, even if the balance of hardships tips decidedly in
      favor of the moving party, it must be shown as an irreducible
      minimum that there is a fair chance of success on the merits."

4

5 <u>Johnson v. California State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting

6 <u>Martin v. International Olympic Comm.</u>, 740 F.2d 670, 675 (9th Cir. 1984).

7       In cases brought by prisoners involving conditions of confinement, any

8 preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

9 harm the court finds requires preliminary relief, and be the least intrusive means necessary to

10 correct the harm."  18 U.S.C. § 3626(a)(2).

11       For the same reasons that the underlying complaint is dismissed as inadequately

12 pled, the court is unable to evaluate the merits, if any, of plaintiff's claims.  Moreover, the

13 request seeks broad-sweeping relief, including relief against those not even named as defendants

14 in the underlying (now dismissed) complaint, absent any foundation.  The request is unsupported

15 by any affidavit or other supporting documentation.  The request will therefore be vacated

16 without prejudice to the filing of an appropriately supported request or motion for preliminary

17 injunctive relief, should plaintiff proceed on colorable claims and any defendant be served.

18       In accordance with the above, IT IS HEREBY ORDERED that:

19       1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

20       2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

21 Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

22 § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

23 Director of the California Department of Corrections and Rehabilitation filed concurrently

24 herewith.

25       3.  The complaint is dismissed for the reasons discussed above, with leave to file

26 an amended complaint within twenty-eight days from the date of service of this order.  Failure to

file an amended complaint will result in a recommendation that the action be dismissed.

           4.  The putative motion for a preliminary injunction/temporary restraining order is vacated without prejudice.

DATED: June 19, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
walk1193.b+

12