UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. WALKER, | No.  2:13-cv-1193 WBS AC P |
| Plaintiff, | |
| v. | <u>ORDER &</u> |
| MOHADJER, Clinical Psychologist, et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

On January 7, 2014, plaintiff's recent motion for a TRO or preliminary injunction was denied. ECF No. 50.[1]  Evidently, this denial has crossed in the mail with yet another request for immediate injunctive relief, filed on January 10, 2013.  ECF No. 51.  Plaintiff continues his pattern of repeatedly filing of deficient motions for immediate injunctive relief, recounting in each filing the most recent events related to his housing and classification status.

In his latest "urgent" request, plaintiff apparently seeks to update his prior request wherein, inter alia, he claimed to be the victim of retaliation for filing lawsuits (including the instant one).  Plaintiff includes a copy of a lockup order dated July 15, 2013 [sic], in which it is stated that plaintiff on July 5, 2013 was being placed in Administrative Segregation at California

---

[1] Plaintiff has appealed an earlier denial of his requests for immediate injunctive relief.  ECF Nos. 41, 42.

1

Medical Facility (CMF) due to the safety concerns of C. Mohadjer and Cain-Mathis (two of the defendants named in the operative second amended complaint) which arose in relation to plaintiff's alleged disruptive behavior on June 26, 2013.  ECF No. 51 at 10.  The order also references plaintiff's having yelled angrily at Mohadjer and unnamed custody staff on June 28, 2013.  Id.  Plaintiff now avers that defendant Mohadjer told him that she never expressed safety concerns about him or told custody staff (non-parties Sgt. Swann and Lt. Torez) who authorized the lockup that plaintiff ever yelled at her, and that has been documented in plaintiff's mental health records in the presence of Dr. Reyes (non-party) a week and a half ago.  Thus, plaintiff contends the lock-up order has been "falsified."

Plaintiff also includes a copy of an Institutional Classification Committee (ICC) review (stamped July 25, 2013), which plaintiff states shows that an investigation resulted in no finding that a threat was made.  However, the committee decision actually reads:

> Subject became increasingly disruptive and threatening i[n] his behavior during his visits to the U-wing Clinic, which resulted in a possible staff safety concern.  Committee is in possession of CDC-128B's authored by LPT V. Cain-Mathis and Dr. Mohadjer.  After reviewing these documents, it is very clear that Subject was quite disruptive in his actions with staff in the U-wing clinic; however, committee sees no overt threat towards staff, nor any other reason to conclude that a realistic threat to their safety exists.  In discussing the matter with Ms. Cain-Mathis, she indicated that she was agreeable to Subject being released from ASU as long as he wasn't housed back in Unit IV (as Subject has received a level of carechange to EOP, he would not be housed in Unit IV).  During the course of today's committee, a confidential memorandum was discovered that had just been scanned into ERMS.  This memorandum outlined an investigation into Subject's allegations of staff sexual misconduct.  While the result of the investigation yielded no corroborating evidence or information, it was agreed that Subject should remain in ASU and be referred for transfer.  A new CDC-114 D shall therefore be issued and Subject will be returned to ICC in one week for transfer consideration.  ICC ACTS TO RETAIN IN ASU DUE TO ALLEGATIONS OF STAFF MISCONDUCT.  SET MAX R CUSTODY AND WG/PG D1/D EFFECTIVE 7/5/13.  ISSUE NEW CDC-114D AND RETURN TO ICC IN ONE WEEK.

Plaintiff then asserts that he was "on mainline" for nearly two months from July 2013 to September 2013, when defendant Cain-Mathis and non-parties Swann and Torez conspired on September 12, 2013 to use illegitimate safety concerns "to get rid of plaintiff."  ECF No. 51 at 2-

2

3. Plaintiff includes a copy of a CDC 128-B chrono dated September 12, 2013 in which defendant Cain-Mathis expresses her safety concern with regard to plaintiff's housing and also states her concern for Dr. Mohadjer then on maternity leave. Id. at 14.

Plaintiff's final exhibit is a copy of an ICC ASU review stamped October 23, 2013 indicating that plaintiff had been placed in ASU after his discharge from the Mental Health Crisis Bed (MHCB) on September 18, 2013. Id. at 16. Following plaintiff's subsequent return to MHCB, plaintiff was returned to the ASU with the EOP level of care, rendering prior transfer recommendations inappropriate. After the committee's review of defendant Cain-Mathis' September 2013 CDC-128B, the ICC found her concerns "sincere" and determined that plaintiff should not be returned to CMF's general population based on concerns of staff safety. He was to be retained in non-disciplinary segregation status. It was noted that he "is deemed Limited Duty with High Medical Risk" and "requires adaptive equipment." Plaintiff was referred for an adverse transfer to LAC-IV EOP-270 PSYCH O/R. Id.

Plaintiff asks the court to order defendant Cain-Mathis to show cause why she feels threatened by plaintiff. He asks the court to see to it that he receive all reports from the investigation of the U-wing incident. Id. at 3. He asks the court to have defendant Cain-Mathis reassigned elsewhere if she feels threatened. Plaintiff alleges that he is being put up for transfer to RJ Donovan, far from home based on false information. Id. at 3-5.

Standards Governing Issuance of a Temporary Restraining Order

The purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller hearing. The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction. It is apparent, however, that requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990). In many cases the emphasis of the court

1  is directed to irreparable harm and the balance of hardships because the merits of a controversy

2  are often difficult to ascertain and adjudicate on short notice.

3        Standards Governing Issuance of a Preliminary Injunction

4  "A preliminary injunction is an 'extraordinary and drastic remedy' . . . never awarded as

5  of right." Munaf v. Geren, 553 U.S. 674, 689 90 (2008) (internal citations omitted).  "A plaintiff

6  seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he

7  is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

8  tips in his favor, and that an injunction is in the public interest." Am. Trucking Assn, Inc. v. City

9  of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (quoting Winter v. Natural Res. Def.

10  Council, Inc., 555 U.S. 7, 20 (2008)).  A preliminary injunction is appropriate when a plaintiff

11  demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply

12  toward the plaintiff, . . . assuming the other two elements of the *Winter* test are also met."

13  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

14  The Ninth Circuit has reiterated that under either formulation of the principles, if the

15  probability of success on the merits is low, preliminary injunctive relief should be denied:

16        Martin explicitly teaches that "[u]nder this last part of the
17        alternative test, even if the balance of hardships tips decidedly in
      favor of the moving party, it must be shown as an irreducible
18        minimum that there is a fair chance of success on the merits."

19  Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting

20  Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984)).

21  In cases brought by prisoners involving conditions of confinement, any preliminary

22  injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

23  court finds requires preliminary relief, and be the least intrusive means necessary to correct the

24  harm."  18 U.S.C. § 3626(a)(2).

25        Likelihood of Success on the Merits

26  The court is unable to assess the likelihood of plaintiff's success on the merits of the

27  second amended complaint at this early juncture.  Only defendant Mohadjer has yet to have

28  returned an executed waiver of service and she has filed, as of November 21, 2013, a motion to

revoke plaintiff's in forma pauperis status and to dismiss the case. ECF No. 48. Plaintiff has failed to respond to the motion.

### Likelihood of Irreparable Harm

Plaintiff does not demonstrate that he is being or will be subjected to irreparable harm.

### Balance of the Equities

Whereas petitioner's prior requests sought a transfer to a state hospital both for psychiatric treatment and as a remedy for his allegedly improper and retaliatory ad seg placement, plaintiff here appears to simply be contending that defendant Cain-Mathis, as well as non-parties, have acted in retaliation against him. On screening, the court did not find that the second amended complaint states a claim of retaliation. See ECF No. 14. Moreover, as plaintiff has previously been told, the federal courts are generally loath to interfere with internal discipline in federal or state prisons. Winsby v. Walsh, 321 F. Supp. 523, 526 (C.D. Cal. 1971). In general, prison officials' housing and classification decisions do not implicate a prisoner's constitutional rights. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Nor does the Constitution guarantee a prisoner placement in a particular prison or protect an inmate against being transferred from one institution to another. Meachum v. Fano, 427 U.S. 215, 223-225 (1976).

> The challenge . . . in prison condition cases, is to uphold the Constitution in such a manner that respects the state's unique interest in managing its prison population. It is a challenge that requires us to draw constitutional lines when necessary, yet minimize any intrusion into state affairs.

Madrid v. Gomez, 889 F. Supp. 1146, 1279 (N.D. Cal. 1995).

Regarding mental health treatment, the balance of the equities does not favor judicial intervention at this stage of the proceedings. Plaintiff does not demonstrate that his mental health is not being adequately monitored.

### Public Interest

No identifiable public interest would be served by the court's interference with plaintiff's treatment or housing.

For all the reasons set forth above, plaintiff has not established his entitlement to immediate injunctive relief. The court will recommend denial of this latest motion for immediate

5

injunctive relief and recommend that plaintiff be cautioned that he will be sanctioned for an abuse of process should he continue to engage in insubstantial but burdensome seriatim filings.

Pending Motion to Revoke IFP/Dismiss

As noted above, plaintiff has failed to respond to defendant Mohadjer's motion to revoke IFP status and to dismiss. ECF No. 48. Local Rule 230(l) provides in part: "Failure of the responding party to file written opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion . . . ." On August 7, 2013 and again on October 28, 2013, plaintiff was advised of the requirements for filing an opposition to the motion and that failure to oppose such a motion may be deemed a waiver of opposition to the motion. Local Rule 110 provides that failure to comply with the Local Rules "may be grounds for imposition of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

Accordingly, IT IS HEREBY ORDERED that, within thirty days of the date of this order, plaintiff shall file an opposition, if any, to defendant Mohadjer's November 21, 2013 motion to revoke IFP status and to dismiss. Failure to file an opposition will be deemed as a statement of non-opposition and shall result in a recommendation that this action be dismissed pursuant Federal Rule of Civil Procedure 41(b).

IT IS RECOMMENDED that:

1. Plaintiff's insufficiently supported motion for a TRO or preliminary injunction (ECF No. 51) be denied;

2. Plaintiff be cautioned that he will be sanctioned for an abuse of process should he continue to engage in insubstantial and burdensome seriatim filings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

1  parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: January 13, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE