UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. WALKER,<br><br>        Plaintiff,<br><br>   v.<br><br>MOHADJER, et al.,<br><br>        Defendants. | No.  2:13-cv-1193 WBS AC P<br><br>FINDINGS AND RECOMMENDATIONS |

I.       Introduction

Plaintiff Jeffrey E. Walker is a former state prisoner previously incarcerated under the authority of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff is currently a civil detainee in Coalinga State Hospital.  See ECF No. 116.  Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983.

This action proceeds on plaintiff's Second Amended Complaint (SAC) filed September 9, 2013.[1]  See ECF No. 33.  Upon screening the SAC pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. 1915A(a), this court found the allegations therein sufficient to state

---

[1] Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

1

cognizable claims for deliberate indifference to plaintiff's serious mental health needs, in violation of the Eighth Amendment, against defendants Mohadjer, Fiallos, Strayhorn, Sheldon, Mathis, White, and Demps. See ECF No. 37.

Presently pending is defendants' motion for summary judgment, premised on the alleged failure of plaintiff to exhaust his administrative remedies. See ECF No. 113. This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be granted and that this action be dismissed without prejudice.

II.   Background

As alleged in the SAC, plaintiff was transferred on December 29, 2012 from the Crisis Center Treatment Team at Lancaster State Prison to the Enhanced Outpatient Program (EOP) at the California Medical Facility (CMF).[2] Plaintiff was transferred for the purpose of receiving specialized mental health treatment, including treatment for post-traumatic stress disorder (PTSD). In January 2013, plaintiff met with his CMF Interdisciplinary Treatment Team (IDTT), which included defendant psychiatrist Dr. Fiallos, defendant clinician Strayhorn, and defendant correctional counselor Sheldon. Plaintiff alleges that the IDTT refused to order the treatment recommended for him by Lancaster State Prison, and refused to recommend that plaintiff be housed in a single cell.

Plaintiff alleges that he was removed from EOP and moved to CMF's T-wing housing unit where he was assigned to defendant psychiatrist D. Mohadjer. Plaintiff asserts that defendant Mohadjer and defendant psych-tech Mathis refused to provide him adequate care resulting in plaintiff having a panic attack in June 2013 and being assigned to suicide watch in the crisis unit headed by defendant psychiatrist Dr. White. Plaintiff alleges that defendant White told him that he was going to take plaintiff off suicide watch despite plaintiff's entreaties to remain. In

////

---

[2] There is some disagreement in the record whether plaintiff arrived at CMF on December 27 or December 29, 2012. Plaintiff alleges in the SAC that he was transferred to CMF "around Dec 29 – 2012 or so." See ECF No. 33 at 8. As discussed below, defendants' inquiry into plaintiff's administrative appeals commenced with a search date of December 27, 2012.

response to defendant White's decision and the alleged inattention of defendant correctional officer Demps, plaintiff attempted suicide.

Plaintiff contends that each defendant was deliberately indifferent to his serious mental health needs, causing plaintiff further psychological stress and physical harm. Plaintiff seeks "immediate removal from prison environment and [to be] sent to outside mental health hospital," ECF No. 33 at 6 (with minor edits); "policy change concerning PTSD patients who suffer from sex abuse," id.; compensatory and punitive damages, each in the amount of one million dollars; and preliminary injunctive relief, id.

Defendants answered the complaint on March 26, 2015. ECF No. 83. Discovery commenced shortly thereafter, see ECF No. 86, but this court later stayed discovery pending resolution of defendants' motion for summary judgment,[3] see ECF No. 105. Defendants filed the instant motion on February 25, 2016, seeking summary judgment on the ground that plaintiff failed to exhaust his administrative remedies on all of his claims pending in this action. Following several extensions of time, plaintiff filed his opposition on August 19, 2016. ECF No. 123. Defendants filed their reply on August 29, 2016. ECF No. 124.

III. Legal Standards

A. Legal Standards for Exhausting Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at 1856). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities

---

[3] Defendants' initial motion for summary judgment, filed July 14, 2015, see ECF No. 99, was vacated without prejudice by order filed December 17, 2015, due in part to plaintiff's lack of access to his legal materials, see ECF No. 110. Following assurance by the Office of the California Attorney General that plaintiff appeared to have all of his necessary legal documents, see ECF No. 111, defendants filed the instant motion for summary judgment, ECF No. 113.

before being haled into court." Jones, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross, 136 S. Ct. at 1862.

Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738). The Supreme Court has clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, at 1859. These circumstances are as follows: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross, 136 S. Ct. at 1856-57.

////

4

1      The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's

2  "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[I]t is the prison's

3  requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 at

4  218.[4] In 2013, when plaintiff filed his relevant grievance, CDCR regulations required, as now,

5  that "all appeals are subject to a third level of review, as described in section 3084.7, before

6  administrative remedies are deemed exhausted." Cal. Code Regs. tit. 15, § 3084.1(b). In 2013, as

7  now, an appeal could be "rejected" for several reasons, including the failure to submit an appeal

8  "on the departmentally approved appeal forms," or "at an inappropriate level bypassing required

9  lower level(s) of review." Id. § 3084.6(b)(14), (15). An appeal could also be "cancelled" for

10 several reasons, including "[t]he inmate . . . continues to submit a rejected appeal while

11 disregarding appeal staff's previous instructions to correct the appeal," and the "[t]ime limits for

12 submitting the appeal are exceeded even though the inmate or parolee had the opportunity to

13 submit within the prescribed time constraints." Id., § 3084.6(c)(3), (4).

14     Failure to exhaust administrative remedies is an affirmative defense that must be raised by

15 defendants and proven on a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162,

16 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014). If a court

17 concludes that a prisoner failed to exhaust his available administrative remedies, the proper

18 remedy is dismissal without prejudice for failure to state a claim upon which relief may be

19 granted. See Albino, 749 F.3d at 1169; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005);

20 Jones, 549 U.S. at 223-24.

21          B.      Legal Standards for Summary Judgment

22     The Ninth Circuit has laid out the analytical approach to be taken by district courts in

23 assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner

24 ////

---

[4] The Ninth Circuit recently held that if a prisoner fails to comply with a prison's procedural requirements in pursuing his appeal but prison officials address the merits of the appeal nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies. See Reyes v. Smith, 810 F. 3d 654 (9th Cir. Jan. 12, 2016). "[I]f prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process," then the prisoner has exhausted "such administrative remedies as are available" under the PLRA. Id. at 658.

1   to exhaust his administrative remedies.  As set forth in Albino, 747 F.3d at 1172 (citation and

2   internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  However, . . . the ultimate burden of proof remains with the defendant.

8   Summary judgment is appropriate when the moving party "shows that there is no genuine

9   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

10  Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

11  proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144

12  v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

13  (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

14  this by "citing to particular parts of materials in the record, including depositions, documents,

15  electronically stored information, affidavits or declarations, stipulations (including those made for

16  purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

17  that such materials "do not establish the absence or presence of a genuine dispute, or that the

18  adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56

19  (c)(1)(A), (B).

20  When the non-moving party bears the burden of proof at trial, "the moving party need

21  only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

22  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

23  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

24  against a party who fails to make a showing sufficient to establish the existence of an element

25  essential to that party's case, and on which that party will bear the burden of proof at trial. See

26  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

27  nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a

28  circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[5]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

---

[5] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

7

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

### IV. Facts

Unless otherwise noted, the court finds the following facts, pertinent to administrative exhaustion, to be undisputed:[6]

- Plaintiff was transferred to the California Medical Facility (CMF) on December 27 or 29, 2012.  (See n.2, supra.)
- At all times relevant to this action, plaintiff was a prisoner at CMF, and all defendants worked at CMF.

---

[6] These facts are drawn from defendants' statement of undisputed facts, ECF No. 113-3, including the supporting declarations and exhibits, ECF Nos. 113-4 (Decl. of R. Robinson), and ECF No. 113-5 (Decl. of W. Harris); and review of plaintiff's verified SAC, ECF No. 33, verified opposition, ECF No. 123, and exhibits attached thereto.

8

- Plaintiff commenced this federal civil rights action by filing his initial complaint on June 12, 2013. See ECF No. 1. Plaintiff averred therein that he had exhausted his administrative remedies. Id. at 3.

- Plaintiff filed the operative Second Amended Complaint (SAC) in this action on September 9, 2013. See ECF No. 33. Plaintiff averred therein that he had exhausted his administrative remedies. Id. at 3.

- Of the appeals submitted by plaintiff during the period December 27, 2012 through September 9, 2013 (the date plaintiff filed his SAC), only the following appeal was both relevant to the allegations of the SAC and later exhausted through Third Level Review (TLR),[7] see ECF No. 113-4 at 9:

    > Appeal Log No. CMF-HC-13-038337 (health care appeal, reflecting the allegations in plaintiff's SAC but naming only Dr. White): Submitted by plaintiff on July 11, 2013; received for First Level Review (FLR) on July 16, 2013; denied at FLR on August 22, 2013; denied at Second Level Review (SLR) on October 10, 2013; and denied at TLR on March 5, 2014.

- R. Robinson, Chief of the Inmate Correspondence and Appeals Branch, California Correctional Health Care Services, avers that review of all plaintiff's appeals, as tracked by the computer database known as the Health Care Appeals and Risk Tracking System (HCARTS), reveals that plaintiff "did not file any health care appeals that were accepted for review at the third level between December 27, 2012, and September 9, 2013," and "did not submit a grievance at the third level that was screened out between December 27, 2012, and September 9, 2013." Decl. of R. Robinson, ECF No. 113-4 at 2-3, ¶¶ 8-9.

- R. Robinson further avers that relevant Appeal Log No. CMF-HC-13-038337 "was submitted at the third level of review on January 21, 2014, and denied on March 5, 2014, well

---

[7] The following disability appeals submitted by plaintiff during this period are not relevant to this action, see ECF No. 113-4 at 9, 11-3:
> Appeal Log No. CMF-ADA-13-001034 (disability appeal) (verifying plaintiff's hand disability): Received for FLR on July 2, 2013; closed as "complete" on July 5, 2013.
> Appeal Log No. CMF-ADA-13-001057 (disability appeal, grounds not noted): Received for FLR on September 5, 2013; closed on September 9, 2013 although designated "pending."

after Plaintiff filed his second amended complaint on September 9, 2013." Id. at ¶ 10.

- W. Harris, Appeals Coordinator at CMF's Health Care Appeals Office, avers generally that "[w]hen an inmate submits a health care appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator will screen and return the appeal, assign it a log number for tracking purposes, and provide the reason for screening with instructions on how to correct the defect if possible." Decl. of W. Harris, ECF No. 113-5 at 2, ¶ 8. Harris identifies three of plaintiff's health care appeals, submitted during the relevant time, that were screened out by the CMF Appeals Office.[8]

- Plaintiff relies on the following two appeals in support of his contention that he attempted to exhaust his administrative remedies were unavailable:

> Appeal Log No. CMF-HC-13-038337: Discussed above. (See Oppo., ECF No. 123 at 5-11.)
>
> Appeal Log No. CMF-M-13-02710:[9] Wide-ranging appeal challenging, inter alia, the events of June 2013 described in the SAC, including the alleged deliberate indifference of defendant Mohadjer. Submitted for FLR on October 6, 2013; initially rejected; accepted for FLR on October 16, 2013; partially granted

---

[8] According to Appeals Coordinator Harris, the following relevant health care appeals submitted by plaintiff during the identified period were screened out for the following reasons, see Harris Decl., ECF No. 113-5 at 2-3, ¶8 (with minor edits, and emphasis added):
  A. Inmate Walker submitted appeal CMF SC-13-000599 on July 17, 2013 as a staff complaint. The appeal, however, was determined not to meet the criteria of a staff complaint and was instead processed as health care appeal. *The appeal was ultimately accepted as appeal CMF-HC-13-038337[.]*
  B. Inmate Walker submitted appeal CMF HC-13-38354 on July 22, 2013. In the appeal, Plaintiff requested a referral to an outside hospital for sex abuse, just as Plaintiff had requested in accepted appeal CMF HC 13038337. . . . The appeal was cancelled at the first level and was *screened out as a duplicate.*
  C. Inmate Walker submitted appeal CMF HC-13038646 on September 3, 2013. In the appeal, Plaintiff alleged that Staff Psychiatrist Hamilton falsified documents. At the first level of review on September 26, 2013, the appeal was canceled and returned to inmate Walker. Inmate Walker was informed that the appeal was being canceled and returned to him because he had previously filed an appeal regarding the same issue that was also canceled. Inmate Walker was informed that he could submit a request to reverse the cancellation of the appeal.

[9] This appeal does not appear to be included among the appeals identified by R. Robinson and W. Harris. This apparent omission is not, however, relevant to the court's analysis. Defendants address the appeal in their reply.

10

on FLR on November 11, 2013; rejected at SLR on December 11, 2013.  (See Oppo., ECF No. 123 at 12-7.)

V.    Analysis

Having reviewed the evidence described above, the court finds that defendants have met their burden of proving that administrative remedies were generally available to plaintiff at CMF, but that plaintiff did not timely exhaust his administrative remedies in this action.  See Albino, 747 F.3d at 1172.  The burden now shifts to plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.

Plaintiff's deliberate indifference claims against defendants encompass the period January to June 2013.  Significantly, plaintiff's first effort to articulate and pursue those claims was set forth in his original complaint filed in this federal civil rights action on June 12, 2013.  Plaintiff submitted his only relevant and fully exhausted administrative grievance, Appeal Log No. CMF-HC-13-038337, on July 11, 2013, one month *after* he commenced this action.  When plaintiff filed the operative SAC on September 9, 2013, this grievance was pending for SLR.  Similarly, plaintiff did not submit his grievance in Appeal Log No. CMF-M-13-02710, on which he also relies, until October 6, 2013, one month *after* he filed his SAC.  Clearly, none of plaintiff's claims asserted in this action were administratively exhausted when he filed his original complaint on June 12, 2013.  Nor is plaintiff able to rely on recent decisions of the Ninth Circuit permitting the addition of newly exhausted claims to an amended complaint,[10] because none of plaintiff's claims were administratively exhausted when he filed his operative SAC on September 9, 2013.

Citing Brown v. Valoff, supra, 422 F.3d 926, plaintiff contends that he was excused from further exhausting Appeal Log No. CMF-HC-13-038337 when it was denied on SLR on October 10, 2013.  See Oppo., ECF No. 123 at 1-4.  In Brown, the Ninth Circuit held, under the

---

[10]  New claims, based on actions that took place *after* the original complaint was filed, are not barred under McKinney so long as the plaintiff exhausted them prior to filing the amended complaint.  See Rhodes, 621 F.3d at 1005; see also Akhtar v. J. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012).  Even new claims based on actions that took place *before* the original complaint was filed are not barred under McKinney so long as the plaintiff exhausted them prior to filing the operative amended complaint.  See Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014).

11

1    circumstances of that case, that Brown had exhausted his administrative remedies when his
2    appeal was partially granted on SLR.  The SLR administrative decision informed Brown that an
3    investigation would be undertaken into his allegations of misconduct by defendant Valoff through
4    a separate and confidential "staff complaint" process.  CDCR governing directives provided that
5    the only "relief" available in response to a staff complaint was a confidential investigation.  When
6    Brown subsequently inquired into the status of the complaint, he was informed that the
7    investigation was complete; he was not informed that he should attempt to further exhaust his
8    allegations.  Thereafter, Brown commenced his federal civil rights action.  The Ninth Circuit
9    found that Brown had exhausted his available administrative remedies, reasoning that "a prisoner
10   need not press on to exhaust further levels of review once he has either received all 'available'
11   remedies at an intermediate level of review or been reliably informed by an administrator that no
12   remedies are available."  Id. at 935.

13   Brown is inapplicable to Appeal Log No. CMF-HC-13-038337, which was designated a
14   health care appeal, not a "staff complaint."  While the SLR on plaintiff's appeal did not expressly
15   inform plaintiff that he had further administrative remedies, see ECF No. 123 at 6-7, any remote
16   similarity with Brown ends there.  The SLR decision was issued nearly four months *after* plaintiff
17   filed his original complaint (and one month *after* plaintiff filed his SAC), and thus cannot serve to
18   demonstrate the effective conclusion of available administrative remedies prior to commencement
19   of this action or to the filing of the SAC.  Moreover, plaintiff thereafter pursued Appeal Log No.
20   CMF-HC-13-038337 through TLR, thus demonstrating that administrative remedies remained
21   available after SLR.

22   Plaintiff also relies on Brown to argue that the FLR decision on his unexhausted Appeal
23   Log No. CMF-M-13-02710 demonstrated that further administrative remedies were unavailable.
24   The FLR decision "partially granted" the appeal, and failed to expressly inform plaintiff that he
25   had further administrative remedies.  See ECF No. 123 at 12-4.  However, the FLR decision was
26   issued November 11, 2013, more than six months *after* plaintiff commenced this federal action,
27   and more than two months *after* plaintiff filed the SAC.
28

Simply put, there is no merit to plaintiff's arguments. As emphasized by the Ninth Circuit in Rhodes, supra, 621 F. 3d 1002, exhaustion of administrative remedies is a prerequisite to *commencing* suit (emphasis added):

> McKinney [v. Carey, 311 F.3d 1198 (9th Cir. 2002) (per curiam)] held that the PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending. See 311 F.3d at 1199. Vaden [v. Summerhill, 449 F.3d 1047 (9th Cir. 2006)] held that a prisoner must exhaust his administrative remedies before he tenders his complaint to the district court. See 449 F.3d at 1050. Vaden also held that the claims which are exhausted after the complaint has been tendered to the district court, but before the district court grants him permission to proceed in forma pauperis and files his complaint, must be dismissed pursuant to § 1997e. See id. at 1050-51. *Together, these cases stand for the proposition that a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court.*

Rhodes, 621 F.3d at 1004-05; accord, Ross, 136 S. Ct. at 1854-55; Woodford, 548 U.S. at 95-6.

Here, in contrast, plaintiff failed even to *commence* the administrative review process before filing his original complaint. Thus, plaintiff has failed to show that he exhausted available administrative remedies before commencing this action or, alternatively, that he submitted a timely appeal that effectively concluded administrative review, see Brown, 422 F.3d at 935-37, or that was improperly screened, see Sapp v. Kimbrell, 623 F. 3d 813, 823-24 (9th Cir. 2010). Because plaintiff has failed to present any evidence demonstrating that CMF's generally available administrative remedies were effectively unavailable to him before commencing this action or filing his SAC, see Albino, 747 F.3d at 1172, it is the recommendation of this court that this action be dismissed without prejudice for failure to state a claim upon which relief may be granted, id. at 1169.

VI.     Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 113, be granted, due to plaintiff's failure to exhaust available administrative remedies; and

2. This action be dismissed without prejudice for failure state a claim upon which relief may be granted.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 1, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14